UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,                  :
                                           :
            -against-                      :     **MEMORANDUM AND ORDER**
                                           :     20-cr-00031 (DLI)
GEROD WOODBERRY,                           :
                                           :
            Defendant.                     :
-------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

By an indictment filed on January 23, 2020, Defendant Gerod Woodberry ("Defendant") is charged with three counts of bank robbery and three counts of attempted bank robbery in violation of 18 U.S.C. § 2113(a). *See*, Indictment, Dkt. Entry No. 8. Defendant moved to dismiss the indictment on the basis that statements made by the U.S. Attorney's Office ("USAO") for the Eastern District of New York ("EDNY") violated applicable pretrial publicity rules and compromised Defendant's right to a fair grand jury process or, alternatively, either for an order disclosing the grand jury transcript or for a change of venue. *See*, Mot. to Dismiss ("MTD"), Dkt. Entry No. 19; Def.'s Mem. of Law in Supp. of MTD ("Def. Mem."), Dkt. Entry No. 19-1. The Government opposed the motion. *See*, Gov't's Mem. of Law in Opp'n to MTD ("Opp'n"), Dkt. Entry No. 24. Defendant replied. *See*, Def.'s Reply in Supp. of MTD ("Reply"), Dkt. Entry No. 26. For the reasons set forth below, the motion to dismiss the indictment is denied in its entirety, as is Defendant's alternative request for either disclosure of the grand jury transcript or a change of venue.

## BACKGROUND

The Court presumes the parties' familiarity with the facts and circumstances of this case, which are set forth in the complaint and other supporting documents filed on the case docket.

Between December 30, 2019 and January 8, 2020, Defendant allegedly committed two bank robberies and attempted to commit two bank robberies at various Chase Bank locations within the Southern District of New York ("SDNY"). *See*, Indictment at ¶¶ 1-4. On January 8, 2020, Defendant was arrested by the New York City Police Department for these offenses and, on January 9, 2020, he was charged by a complaint filed in New York County Criminal Court. *See*, Opp'n at 3. Based on New York State's then recently enacted bail reform laws, which went into effect on January 1, 2020, Defendant was released without bail on January 10, 2020. *Id.*; *See also*, New York State Fiscal Year (SFY) Budget for 2019-20 (Apr. 1, 2019). Immediately, upon his release from custody, Defendant allegedly committed a bank robbery in the EDNY and attempted to commit a bank robbery in the SDNY on January 10 and 14, 2020, respectively. *See*, Indictment at ¶¶ 5-6.

On January 14, 2020, the Government filed a complaint under seal against Defendant for the alleged January 10, 2020 robbery committed in violation of 18 U.S.C. § 2113(a). *See*, Sealed Compl. and Aff. in Supp. of an Arrest Warrant ("Compl."), Dkt. Entry No. 1. On the same day, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, issued an arrest warrant for Defendant, based on the Complaint. *See*, Warrant for Arrest, Dkt. Entry No. 2.

On January 17, 2020, knowing that he was the suspect in a series of bank robberies, Defendant surrendered at the New York County Criminal Court. *See*, Def. Mem. at 2. Defendant was arrested by federal agents and interviewed at the Federal Bureau of Investigation's New York office. *See*, Gov't's Mem. of Law in Opp'n to Def.'s Mot. to Suppress, Dkt. Entry No. 23, at 4-7.

Defendant waived his *Miranda* rights, signed a waiver form to that effect, and spoke to federal agents about the alleged robberies. *Id.* at 4-7.[1]

On January 17, 2020, the Government filed on the public docket a memorandum seeking a permanent order of detention. *See*, Detention Mem., Dkt. Entry No. 4. To support its contention that Defendant's detention was necessary because he was a danger to the community and posed a significant flight risk, the Government described Defendant's robberies and attempted robberies committed in the two-week span between December 30, 2019 and January 14, 2020. *Id.* at 1-3. On January 17, 2020, Magistrate Judge Reyes ordered the complaint and arrest warrant unsealed. *See*, Order to Unseal Case, Dkt. Entry No. 3.

Later on January 17, 2020, the USAO for the EDNY issued a press release (the "Press Release"), which began, "A criminal complaint was unsealed today in federal court in Brooklyn charging Gerod Woodberry with the robbery of a Chase Bank in downtown Brooklyn on January 10, 2020." *See*, Gerod Woodberry Arrested for Bank Robbery (Jan. 17, 2020), https://www.justice.gov/usao-edny/pr/gerod-woodberry-arrested-bank-robbery, Ex. A to MTD, Dkt. Entry No. 19-2. The Press Release stated that "United States Attorney Donoghue issued a statement today noting some of the facts of the case," and reiterated certain allegations "detailed in court filings." *Id.* The Press Release further noted, "The charge in the complaint is an allegation, and the defendant is presumed innocent unless and until proven guilty." *Id.*

Later that day, the USAO issued a statement entitled "Statement by United States Attorney Richard P. Donoghue" (the "Statement"). *See*, Statement by United States Attorney Richard P. Donoghue (Jan. 17, 2020), https://www.justice.gov/usao-edny/pr/statement-united-states-

---

[1] Defendant also moved to suppress statements he made during the January 17, 2020 interview. *See*, Mot. to Supp. Statement, Dkt. Entry No. 18. By an oral decision rendered by the Court on March 3, 2021, the motion was denied. *See*, Minute Entry dated March 3, 2021.

3

attorney-richard-p-donoghue-0, Ex. B to MTD, Dkt. Entry No. 19-3. The Statement announced that Defendant had surrendered, adding that, "As alleged in court documents, Gerod Woodberry robbed or attempted to rob six New York City banks in 16 days. . . . This robbery spree is unprecedented and it is made all the more so by the fact that he was actually arrested and released in the midst of his crimes." *Id.* The Statement continued:

> No sound, rational and fair criminal justice system requires the pre-trial release of criminal defendants who demonstrate such determination to continuously commit serious crimes. Prior to the recently-enacted reforms, New York judges weighing pre-trial release could consider the flight risk, but not the dangerousness, posed by a charged defendant. The recent reforms have made a bad situation worse by entirely excluding classes of purportedly 'non-violent' felonies – like the bank robberies here – from pre-trial confinement eligibility. Preventing judges from considering the danger a charged defendant poses to the public when making a pre-trial confinement decision defies common sense and endangers all New Yorkers.
>
> The recently-enacted bail reforms have dramatically altered the New York criminal justice system and even more dramatic criminal justice proposals are under consideration in New York and across the country. While we must ensure that all criminal justice systems are open to scrutiny and reform, we must also guard against the outright dismantling of criminal justice systems masquerading as criminal justice reform.

*Id.* The Statement contained a footnote that stated, "The charges in the complaint are allegations, the defendant is presumed innocent unless and until proven guilty." *Id.* n.1.

On January 23, 2020, a federal grand jury sitting in this district returned the instant indictment, charging Defendant with six counts, each in violation of 18 U.S.C. § 2113(a): robbery of a Chase Bank located at 839 Ninth Avenue, New York, New York on December 30, 2019 (Count One), attempted robbery of a Chase Bank located at 2438 Broadway, New York, New York on January 3, 2020 (Count Two), robbery of a Chase Bank located at 340 Avenue of the Americas, New York, New York on January 6, 2020 (Count Three), attempted robbery of a Chase Bank located at 260 Columbus Avenue, New York, New York on January 8, 2020 (Count Four), robbery of a Chase Bank located at 20 Flatbush Avenue, Brooklyn, New York on January 10, 2020 (Count

4

Five), and attempted robbery of a Citibank located at 800 Third Avenue, New York, New York on January 14, 2020 (Count Six). *See*, Indictment at ¶¶ 1-6.

Between January 17, 2020 and the filing of the indictment on January 23, 2020, the Statement was disseminated by the media. *The New York Times*, *New York Daily News* and *NBC New York*, among others, quoted from the Statement, and the *New York Post* quoted or referenced the Statement in three articles on three consecutive days.[2]

Defendant moved for dismissal of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3) contending that: (1) the Press Release and Statement violated applicable pretrial publicity rules; (2) the Press Release and Statement compromised Defendant's right to a fair grand jury process and are part of a pattern of inappropriate pretrial publicity; (3) in the alternative, the Court either should (a) order the grand jury transcript disclosed or (b) grant a change of venue pursuant to Federal Rule of Criminal Procedure 21(a). *See*, *generally*, Def. Mem.

The Government countered that dismissal is not appropriate here because: (1) the Press Release and Statement do not violate the "clear rules" that ensure the integrity of the grand jury's functions; (2) the Press Release and Statement do not opine on Defendant's guilt or otherwise violate the publicity rules; and (3) Defendant cannot establish that he was prejudiced by the Press Release or the Statement. *See*, *generally*, Opp'n. Defendant replied, contending that the

---

[2] *See*, Tracey Tully and Sean Piccoli, *He Was Charged With 4 Bank Heists, and Freed. Then He Struck Again, Police Say.*, N.Y. TIMES (Jan. 19, 2020), https://www.nytimes.com/2020/01/19/nyregion/bank-robber-bail-reform-nyc.html; Ellen Moynihan and Wes Parnell, *Serial Bank Robber Set Free by State Judge Now Aims for Bail from the Feds*, N.Y. DAILY NEWS (Jan. 19, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-gerod-woodberry-bank-robber-federal-court-20200119-332oz24mp5fzrc2t5prgwj2frm-story.html; Jonathan Dienst, *Freed Due to NY Bail Reform Law, Serial Bank Robbery Suspect Arrested by Feds*, NBC N.Y. (Jan. 17, 2020), https://www.nbcnewyork.com/news/local/crime-and-courts/freed-due-to-ny-bail-reform-law-serial-bank-robbery-suspect-arrested-by-feds/2261671/; Rebecca Rosenberg and Bruce Golding, *Accused six-time bank robber freed by state bail reforms is finally jailed – by the feds*, N.Y. POST (Jan. 17, 2020), https://nypost.com/2020/01/17/bail-reform-bank-robber-surrenders-inside-nyc-courthouse/; Ben Cohn et. al., *Ridiculous Reform Forces NYPD to Ask Feds to Catch Serial NYC Bank Robber*, N.Y. POST (Jan. 18, 2020), https://nypost.com/2020/01/18/ridiculous-reform-forces-nypd-to-ask-feds-to-catch-serial-nyc-bank-robber/; Kevin Sheehan and Bruce Golding, *Feds Question if Alleged Bail-Reform Bank 'Robber' Should Already Be in Jail*, N.Y. POST (Jan. 19, 2020), https://nypost.com/2020/01/19/bail-reform-bank-robber-should-be-in-south-carolina-prison-prosecutor/.

Government misapplied legal standards in its argument and dismissal is warranted because the pretrial publicity originated from the USAO.  *See*, *generally*, Reply.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), a defendant may move to dismiss an indictment for various defects in "instituting the prosecution," including "selective or vindictive prosecution" and "an error in the grand-jury proceeding or preliminary hearing."  Fed. R. Crim. P. 12(b)(3)(A)(iv)-(v).  "A motion to dismiss an indictment must satisfy a high standard."  *United States v. Brooks*, 2009 WL 3644122, at *2 (E.D.N.Y. Oct. 27, 2009) (citation and internal quotations omitted).  As the Court of Appeals for the Second Circuit has "repeatedly emphasized, the exercise of a court's supervisory authority to dismiss an indictment is a 'drastic remedy' that should be utilized with caution and only in extreme cases."  *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018) (quoting *United States v. Brown*, 602 F.2d 1073, 1076 (2d Cir. 1979)).

A court's supervisory power to dismiss an indictment based on alleged prosecutorial misconduct is restricted to "where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's functions."  *United States v. Williams*, 504 U.S. 36, 46 (1992) (internal quotation marks and citation omitted).  These "clear rules" include, but are not limited to, grand jury secrecy requirements under Federal Rule of Criminal Procedure 6 and certain criminal statutes that criminalize making false statements to the grand jury.  *Id.* at 46 n.6.  "Absent a violation of one of these rules by the prosecution team, a court lacks authority to dismiss an indictment."  *United States v. Skelos*, 2018 WL 2849712, at *1 (S.D.N.Y. June 8, 2018) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 260 (1988)), *aff'd*, 988 F.3d 645 (2d Cir. 2021).

Even in the rare case where one of these "clear rules" has been violated, a court still "may not dismiss an indictment" absent prejudice to the defendant. *Bank of Nova Scotia*, 487 U.S. at 254. Thus, "dismissal is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Walters*, 910 F.3d at 23 (quoting *Bank of Nova Scotia*, 487 U.S. at 256) (internal quotation marks omitted).

## DISCUSSION

I. **The Press Release and Statement**

Defendant contends that the Press Release and the Statement violated overlapping codes of prosecutorial conduct, including the Court's Local Rules, Department of Justice ("DOJ") regulations, and ethical standards of conduct. *See*, Def. Mem. at 5.

Local Criminal Rule 23.1(a) states, in pertinent part:

> It is the duty of the lawyer or law firm . . . not to release or authorize the release of *nonpublic information* or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

Local Crim. R. 23.1(a) (emphasis added).

"With respect to a grand jury or other pending investigation of any criminal matter," Local Criminal Rule 23.1(b) similarly prohibits "making any extrajudicial statement . . . *that goes beyond the public record* . . . ." *Id.* at 23.1(b) (emphasis added). Subsection (d) of the Rule identifies subject matters that "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule," none of which apply to the circumstances of the case at bar. *Id.* at 23.1(d).

7

Subsection (e) of the Rule identifies "subject matters that presumptively *do not involve* a substantial likelihood that their dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule." *Id.* at 23(e) (emphasis added). Almost of all the identified subject matters that presumptively do not violate the rule apply to the Press Release and Statement, especially the following:

> (1) An announcement, at the time of arrest, of the fact and circumstances of arrest (including time and place of arrest, resistance, pursuit and use of weapons), the identity of the investigating and arresting officer or agency and the length of investigation; . . . (3) The nature, substance or text of the charge, including a brief description of the offense charged; (4) Quoting or referring without comment to public records of the Court in the case; (5) An announcement of the scheduling or result of any stage in the judicial process, or an announcement that a matter is no longer under investigation . . . .

*Id*. at 23(e)(1), (3), (4), (5).

In addition, "[t]he Department of Justice 'has issued guidelines to it[s] employees governing trial publicity. . . . DOJ employees are permitted only to release identifying information regarding the defendant, the substance of the charges, the identity of the investigating agency and the circumstances immediately surrounding an arrest.'" *United States v. Perryman*, 2013 WL 4039374, at *13 (E.D.N.Y. Aug. 7, 2013) (quoting Elkan Abramowitz and Barry A. Bohrer, *White Collar Crime, Pretrial Publicity in Criminal Cases: Media Sound Bites, Justice?*, N.Y.L.J. (Jan. 6, 2009)). The DOJ guidelines prohibit prosecutors from making any statement "which could reasonably be expected to be disseminated by means of public communications, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial." 28 C.F.R. § 50.2(b)(2). "Disclosures should include only incontrovertible, factual matters, and should not include subjective observations." *Id.* at § 50.2(b)(3). Notably, the DOJ guidelines are substantially similar to the provisions of this Court's Local Rule 23.1 noted above.

8

Defendant's argument that the Press Release and Statement violated New York Rule of Professional Conduct 3.6(a) is immaterial to the motion before the Court. *See*, Def. Mem. at 5-6. "[T]his is not a disciplinary proceeding and therefore the question of whether the U.S. Attorney's extrajudicial remarks violated any ethical rules is not, per se, before the Court." *United States v. Silver*, 103 F. Supp.3d 370, 376 (S.D.N.Y. 2015) (citation omitted); *See also*, *United States v. Corbin*, 620 F. Supp.2d 400, 411 (E.D.N.Y. 2009) ("In ruling in this criminal case, it is not my obligation to determine such matters involving the Rules of Professional Conduct.").

Concerning the Press Release, Defendant argues that it violated the pretrial publicity rules because, "[w]hile the complaint only concerned a single bank robbery on January 10, 2020," the Press Release stated that Defendant robbed or attempted to rob six New York City banks in 16 days and, thus, contains more than "a brief description of the offense charged." *See*, Def. Mem. at 6 (citing Local Crim. R. 23.1(e)(3)). However, the complaint, which was made public before the issuance of Press Release, mentioned Defendant's alleged December 30, 2019, January 8, 2020, and January 10, 2020 robberies, as well as his January 8, 2020 arrest. *See*, Compl. at ¶ 5; *See also*, Order to Unseal Case.

Additionally, the Government's Detention Memorandum, also a public document, described all of Defendant's alleged robberies and attempted robberies that took place between December 30, 2019 and January 14, 2020. *See*, Detention Mem. at 1-3. In fact, the Press Release specifically referred to the Detention Memorandum. *See*, The Press Release, Ex. A to MTD. Therefore, the Press Release did not comment on any information that was not part of public filings before the Court. *See*, Local Crim. R. 23.1(a) ("It is the duty of the lawyer or law firm . . . not to release or authorize the release of nonpublic information . . . in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that

9

such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.")

With regard to the Statement, Defendant claims it was "far more violative of the rules" than the Press Release in several ways: (1) by referring to the series of robberies as a "spree" and "unprecedented," thus, opining on the guilt, character and merits of the case; (2) by remarking that "[n]o sound, rational, and fair criminal justice system requires the pre-trial release" of certain defendants, the Statement suggested that no sound or rational system would release Defendant; (3) by stating that Defendant is someone who "demonstrate[s] such determination to continuously commit serious crimes," the USAO improperly commented on Defendant's character and evidence in his case; and (4) by using Defendant's "arrest as a hook to make sweeping and pointed comments regarding the raging debate about bail reform," which "is inherently prejudicial to Woodberry's case and violates both the spirit and the letter of the applicable rules." Def. Mem. at 6-7.

As an initial matter, the Court finds Defendant's concern about the USAO's purported characterization of Defendant's alleged criminal conduct unsupported by the facts and circumstances present here. Describing six separate incidents of robberies or attempted robberies committed within a span of 16 days in the same city as a "spree" or "unprecedented" is neither unreasonable nor improper. Also, the Statement was made by the U.S. Attorney himself, not by a line prosecutor assigned to the case, about an arrest for crimes that already had occurred. *See*, The Statement, Ex. B to MTD. Of note, it is part of the role of a U.S. Attorney to make policies in connection with the administration of the USAO.

The Court further finds that the portion in the Statement regarding the crimes for which Defendant subsequently was indicted and that were charged in the Complaint served as a "brief

description of the offense charged." Local Crim. R. 23.1(c); *See also*, 28 C.F.R. § 50.2(3)(iii) (DOJ personnel may make public "[t]he length or scope of an investigation"). Moreover, the Local Rule provides that a brief description of the facts and circumstances of the arrest as well as the nature, substance, or brief description of the offenses charged is presumed not to violate the Rule. *See*, Local Crim. R. 23.1(e)(1), (3).

The Court also finds that dismissal of the indictment is not appropriate because Defendant has failed to demonstrate that the Press Release or Statement prejudiced him. *See*, *Walters*, 910 F.3d at 23 ("Dismissal is not appropriate . . . unless errors prejudiced the defendant."). In order for the Court to exercise properly its supervisory power to dismiss the indictment, Defendant must be prejudiced by the Government's actions, "that is, that the violations substantially influenced the grand jury's decision to indict or that there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* (quoting *Bank of Nova Scotia*, 487 U.S. at 256) (internal quotation marks omitted).

Without citing any statutory authority or case law from courts within or from the Second Circuit, Defendant baldly suggests that a different analysis applies here because the pretrial publicity "originated with the U.S. Attorney as opposed to another independent source." Reply at 6. Defendant further argues, without support, that the media coverage of the Statement prejudiced Defendant and warrants dismissal of the indictment. *See*, Def. Mem. at 11-15. These arguments lack merit.

As is the case here, in *United States v. Silver*, the defendant was "unable to cite a single case where a court has taken the extreme step of dismissing an indictment solely based on pre-indictment publicity, whether instigated by the prosecutor or simply derived from the media at large." *Silver*, 103 F. Supp.3d 370, 380 (S.D.N.Y. 2015). *Silver* is in accord with prior decisions

11

from courts in this Circuit holding that, as a general matter, adverse pretrial publicity is not a sufficient ground to dismiss an indictment. *See*, *e.g.*, *United States v. Myers*, 510 F. Supp. 323, 325 (E.D.N.Y. 1980) ("[W]hile the issue has been raised innumerable times, defendants have been unable to point to a final decision in a single case where an indictment has been dismissed upon the ground that the grand jury was prejudiced by pre-trial publicity."); *In re Grand Jury Investigation*, 1987 WL 8073, at *7 n.4 (E.D.N.Y. Feb. 23, 1987) (noting that petitioners seeking to have the grand jury dismissed failed to cite any case in which a court exercised its supervisory powers to dismiss an indictment solely due to preindictment publicity).

Significantly, the *Silver* court dealt with statements somewhat similar to the Statement here, where the U.S. Attorney referred to Defendant's alleged criminal conduct to make a broader commentary on New Yok State's bail reform legislation. *See*, The Statement, Ex. B to MTD. In *Silver*, the Speaker of the New York Assembly was arrested on a complaint, and the USAO for the SDNY issued a statement highlighting a "culture of corruption" among political leaders in Albany, New York. *See*, *Silver*, 103 F. Supp.3d at 374. In particular, the USAO stated, "[p]oliticians are supposed to be on the people's payroll, not on secret retainer to wealthy special interests they do favors for. These charges go to the very core of what ails Albany—a lack of transparency, lack of accountability, and lack of principle joined with an overabundance of greed, cronyism, and self-dealing." *Id.*

The *Silver* court "found that it would not be unreasonable for members of the media or the public to interpret" the above statement as "a commentary on the character or guilt of the [d]efendant." *Id.* at 379. While "troubled" by the U.S. Attorney's remarks that "appeared to bundle together unproven allegations regarding the [d]efendant with broader commentary on corruption and a lack of transparency in certain aspects of New York State politics," the *Silver*

12

court concluded that dismissal of the indictment was not appropriate "in the wake of established precedent holding that the existence of negative pretrial publicity is generally not sufficient to show substantial influence or actual prejudice." *Id.* at 378-80. This Court similarly concludes, based on established precedent and the less inflammatory remarks in the Press Release and Statement at issue here versus those in *Silver*, that Defendant has not shown any actual prejudice or substantial influence on the process.

Finally, Defendant argues that the Statement is part of a pattern of inappropriate pretrial publicity engaged in by the EDNY USAO and that the Court should exercise its supervisory power to dismiss the indictment to send a "stronger reminder" to the USAO that statements it makes to the media must comply with the rules. *See*, Def. Mem. at 15-16. In support of his argument that the USAO "has been reminded about their pretrial publicity duties numerous times," Defendant cites only three cases, dating back to 2013. The Court finds that such a pattern does not exist. Thus, the extraordinary remedy of dismissal is not warranted here.

One of Defendant's examples involves statements by local law enforcement, and **not** by the USAO. *See*, *United States v. Perryman*, 2013 WL 4039374, at *5 (E.D.N.Y. Aug. 7, 2013). Another is dicta contained in a two-sentence footnote in which the court acknowledged that the defendant "raise[d] the public comments the U.S. Attorney's Office has made regarding defendant's alleged crimes," and "remind[ed] the Government of its obligations to abstain from making statements to the media that may reasonably be expected to influence the perceptions of the potential jury pool and therefore the outcome of the trial." *United States v. Guzman Loera*, 09-cr-00466 (BMC) (E.D.N.Y. May 4, 2017), Dkt. Entry No. 71 at 2 n.1. The third example relied on by Defendant is a quote from *Corbin*, that "[the USAO's] statement may violate the disciplinary rules by offering opinions as to Corbin's guilt." 620 F. Supp.2d at 411. However, Defendant

13

omits the following sentence, in which the *Corbin* court declined to determine whether the USAO's statement violates the disciplinary rules as outside the court's reach: "In ruling in this criminal case, it is not my obligation to determine such matters involving the Rules of Professional Conduct." *Id*.

Notably, neither the Press Release nor Statement at issue here comments on Defendant's guilt, but rather notes that Defendant is presumed innocent of all charges until proven guilty. *See*, The Press Release, Ex. A to MTD; The Statement, Ex. B to MTD, at n.1. Furthermore, the USAO's website indicates that approximately 1,657 press releases have been released by the USAO since 2013. *See*, USAO, EDNY, Press Releases, https://www.justice.gov/usao-edny/pr (last accessed June 29, 2021). In both scope and form, the "reminders" to the USAO identified by Defendant fail to demonstrate "systematic and pervasive" misconduct sufficient "to raise a substantial and serious question about the fundamental fairness of the process." *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990). In sum, the Court finds that the Defendant has failed to establish that the Press Release or Statement has prejudiced him. Accordingly, Defendant's motion to dismiss the indictment is denied.

## II. Disclosure of the Grand Jury Proceedings

As an alternative to dismissal of the indictment, Defendant seeks an order to disclose the grand jury proceedings. *See*, Def. Mem. at 16-17. Under Federal Rule of Criminal Procedure 6(e), a court may direct the disclosure of information regarding grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

However, "proceedings before a grand jury shall generally remain secret." *Silver*, 103 F. Supp.3d at 381 (quoting *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997)) (internal

quotation marks omitted). "A defendant seeking disclosure of grand jury materials must demonstrate a 'particularized need' that outweighs the presumption of secrecy." *Id.* (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)) (internal quotation marks omitted). "Speculation and surmise as to what occurred before the grand jury is not a substitute for fact." *Id.* (citations omitted). "In determining whether disclosure of information regarding the grand jury's proceedings is appropriate, courts weigh the need for disclosure against the public interest in maintaining secrecy over such proceedings." *Id.* (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)).

Defendant has not met his burden of "establishing a 'particularized need' that outweighs the presumption of secrecy so as to justify the disclosure of the grand jury minutes . . . ." *Id.* at 382 (citing *United States v. Nunan*, 236 F.2d 576, 593-94 (2d Cir. 1956)). Defendant claims that he has met "[t]he high standards" for disclosure of grand jury proceedings. *See*, Def. Mem. at 17. Defendant argues that, the fact that the Press Release and Statement occurred days before the indictment, together with their "presumptively prejudicial nature," outweighs the need for secrecy in grand jury proceedings. Def. Mem. at 17. Defendant further argues that the interest in grand jury secrecy is reduced here given that Defendant is already in custody; Defendant's counsel is unaware of any evidence of coconspirators that are the target of continued investigation; and Defendant's arrest and alleged crimes already have been publicized heavily. *Id.*

The Court finds Defendant's general assertions, made without any legal or factual support, are mere "speculation and surmise," and do not warrant disclosure of the grand jury proceedings. *See*, *Silver*, 103 F. Supp.3d at 382 ("Defendant's speculative claim that the grand jurors may have been prejudiced by the U.S. Attorney's comments falls short of establishing a 'particularized need' that outweighs the presumption of secrecy so as to justify the disclosure of the grand jury minutes

or polling of the grand jurors."); *See also*, *United States v. Burke*, 700 F.2d 70, 82 (2d Cir. 1983) (affirming denial of hearing on preindictment publicity where defendants "failed to cite any persuasive evidence of actual grand jury prejudice" and instead "contend[ed] in very general terms that the [adverse news coverage] prejudiced them," which was "clearly insufficient to warrant reversal under prevailing law"). As such, Defendant's request for an order to disclose grand jury proceedings is denied.

## III. Change of Venue

As another alternative to dismissal of the indictment, Defendant requests a change of venue under Federal Rule of Criminal Procedure 21(a). *See*, Def. Mem. at 18. Rule 21(a) provides that, "[u]pon the defendant's motion, the court must transfer the proceeding against the defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

"In assessing whether that is the case, the district court 'may' consider 'the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially.'" *Skelos*, 988 F.3d at 659 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 967 (2d Cir. 1990)). "The district court may also take into account the size of the venue, and the amount of time that has passed since the bulk of the negative publicity, as 'the effects of publicity [can] dissipate[]' before trial." *Id.* (citing *United States v. Dioguardi*, 428 F.2d 1033, 1039 (2d Cir. 1970) and quoting *United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010)). These factors do not support Defendant's request to transfer venue.

16

There are approximately eight (8) million people residing in the Eastern District of New York, and the jury pool is large and diverse. *See*, *United States v. Prado*, 2011 WL 3472509, at *14, 17 n.12 (E.D.N.Y. Aug. 5, 2011) (noting that the EDNY is "comprised not only of Nassau and Suffolk Counties, but also of the boroughs of Brooklyn, Queens, and Staten Island"). As the Supreme Court has noted, it is "hard to sustain" the "suggestion that 12 impartial individuals could not be impaneled" in a district with a "large, diverse pool of potential jurors." *Skilling v. United States*, 561 U.S. 358, 382 (2010) (discussing the jury pool of more than 4.5 million individuals residing in Houston, Texas); *See also*, *United States v. Ayala*, 64 F. Supp.3d 446, 452 (E.D.N.Y. 2014) ("Given the size and diversity of the jury pool, the Court does not find it reasonably likely 'that prejudicial news prior to trial will prevent a fair trial.'" (quoting *Maldonado-Rivera*, 922 F.2d at 966-67)).

Defendant contends that potential jurors' "perception of [Defendant's] case is inextricably bound up with their views on New York criminal justice reform" and given New York media's widespread coverage of the USAO's "inflammatory quotes about a hot button issue of great interest to New Yorkers, it is hard to imagine that [Defendant] can receive a fair trial in New York." Def. Mem. at 18. However, "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Skilling*, 561 U.S. at 384 (internal quotation marks and citation omitted).

Defendant has not demonstrated that the purportedly adverse pretrial publicity here is meaningfully different from the "[m]any high profile cases have been tried in the Southern and Eastern Districts of New York" where "courts have relied on 'thorough voir dire examinations . . . to produce unbiased juries.'" *United States v. Awadallah*, 457 F.Supp.2d 246, 254 (S.D.N.Y. 2006) (quoting *United States v. Volpe*, 42 F.Supp.2d 204, 218 (E.D.N.Y. 1999)); *See also*, *Volpe*,

17

42 F. Supp.2d at 218 (listing high profile organized crime, terrorism, and police brutality trials in New York).

Furthermore, there has been little, if any, publicity about the charges against the Defendant since January 2020. Most importantly, in light of the subsequent media attention focused, *inter alia*, on the COVID-19 pandemic, social justice and race equality movements, the 2020 presidential election, and the 2021 New York City mayoral election, any public perception of Defendant's guilt probably will have dissipated. *See*, *e.g.*, *United States v. Avenatti*, 2020 WL 236723, at *13 (S.D.N.Y. Jan. 15, 2020) (U.S. Attorney's "brief remarks—made ten months ago and in the context of a twelve-minute post-arrest press conference—present[ed] no risk to [defendant's] right to a fair trial"); *Corbin*, 620 F. Supp.2d at 412 ("[W]ith trial many months away, the Court finds that whatever negative pretrial publicity has been generated in this case, and whatever violation of the disciplinary rules may have occurred, the defendant has failed to show a widespread public perception of his guilt."). Accordingly, Defendant's request for a change of venue is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the indictment is denied in its entirety, as is Defendant's alternative request either for disclosure of the grand jury transcript or a change of venue.

SO ORDERED.

Dated: Brooklyn, New York
       July 1, 2021

                                              /s/
                                  DORA L. IRIZARRY
                              United States District Judge